IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

ELLEN PETRICK,  an individual.

       Plaintiff,

v.

SAUL DIAZ-SABAS, an individual,
JOHN MICHAEL COLLINS, an individual,
AZ ASPHALT, LLC, a Colorado Limited Liability Corporation , and
UNKNOWN DEFENDANTS 1-4,

       Defendants.

---

### COMPLAINT AND JURY DEMAND FOR DAMAGES FOR WRONGFUL DEATH

---

COMES NOW Plaintiff, Ellen Petrick, by and through her attorneys, Crawford Weiss, LLC, and for her Complaint and Jury Demand against the Defendants Saul Diaz- Sabas, John Michael Collins and AZ Asphalt, LLC, states and alleges as follows:

### I.    PARTIES

1. Plaintiff Ellen Petrick (hereinafter "Ellen Petrick") is a resident of the State of California and is the surviving spouse of Dale Thomas.

2. At all times pertinent hereto, Dale Thomas, now deceased, was a resident of Gunnison, Gunnison County, Colorado.

1

3.      Upon information and belief, Defendant Saul Diaz-Sabas (hereinafter "Diaz-Sabas") was, at all times pertinent herein, a resident of Gunnison County, Colorado and was employed by Defendant AZ Asphalt, LLC and/or Defendant John Michael Collins.

4.      Upon information and belief, Defendant John Michael Collins (hereinafter "Collins") was, at all times pertinent herein, a resident of Gunnison County, Colorado and engaged in the business of owning and operating an asphalt company, AZ Asphalt, LLC, within the State of Colorado.

5.      At all times pertinent herein, Defendant AZ Asphalt, LLC   (hereinafter "AZ Asphalt") was a Colorado Limited Liability Company engaged in the business of asphalt construction and maintenance. Service may be had upon this Defendant through its registered agent John Mike Collins at: 5048 CR 730, Gunnison, Colorado 81230.

6.      Unknown Defendants 1-4 are Defendants whose identity is not known to Plaintiff at this time but who may be later designated by any named Defendant as a potential party bearing liability for this incident.

## II.      JURISDICTION & VENUE

7.      This Court has diversity jurisidiction pursuant to 28 U.S.C. § 1332, as this matter concerns an action between citizens of different states in which the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

8.      Venue is proper in the District of Colorado pursuant to 28 USC §1391(b) as all of the events relevant to the claims set forth in this Complaint occurred within Gunnison County, Colorado.

### III.      FACTUAL ALLEGATIONS

9.      On June 19, 2015, Dale Thomas was a 64 year old man living in Gunnison, Colorado with his wife of 3.5 years, Ellen Petrick.

10.     The couple had exchanged marital vows in a ceremony in front of friends and family on December 31, 2011 and have held themselves out as husband and wife since that time.

11.     Dale Thomas was an integral part of the marital household and took on nearly all of the heavy physical maintenance of the marital residence including, but not limited to: painting, general house maintenance, chimney and stove cleaning, carpentry, yard work, snow shovelling, and procuring firewood.

12.     At all times pertinent herein, Dale Thomas was self-employed as the owner and operator of Rocky Mountain Log & Antler Furnishings in Gunnison, Colorado.

13.     In addition to this business, Dale Thomas frequently performed carpentry and fencing work on ranches and custom homes through western Colorado.

14.     Dale Thomas was an avid bicycle rider for more than 40 years having rode competitively in his younger years and then as as avid recreational cyclist for several decades since.

15.    On the afternoon of June 19, 2015, Dale Thomas went out for a casual bicycle ride towards the town of Crested Butte, Colorado on a route he rode countless times over the preceding 40 years that he had lived in Gunnison.

16.    Dale Thomas' cycling route followed Colorado Highway 135 north from the town of Gunnision and was a favorite of local cyclists because it has a wide paved shoulder whereby cyclists would be protected from the motor vehicle traffic along the highway.

17.    At approximately 4:25 p.m., Dale Thomas was returning towards Gunnison and riding southbound within the paved shoulder of the highway approximately 500-700 feet north of milepost 6 of Highway 135 north of Gunnison. He was wearing his helmet and all appropriate cycling gear at the time.

18.    As he approached the intersection of Highway 135 and County Road 8, Dale Thomas was observed to be riding several feet inside of the shoulder and in a straight and consistent line of travel.

19.    At about this same time, a 1998 Dodge Ram 2500 pickup operated by Diaz-Sabas was also traveling southbound on Highway 135 and approaching the intersection of County Road 8.

20.    At all times pertinent herein, this Dodge pickup was owned by Collins and used in the business operations of AZ Asphalt.

4

21.     At all times pertinent herein, the Dodge pickup was being used to tow a long construction trailer carrying a Case Skid Steer which had been used by AZ Asphalt in or near Crested Butte, Colorado.

22.     Upon information and belief, Defendant Collins, in his role as owner and/or manager of AZ Asphalt, had instructed and given permission for Diaz-Sabas to drive the Dodge pickup and trailer on this afternoon.

23.     Upon information and belief, Diaz-Sabas was instructed to drive from a job site in or near Crested Butte, Colorado to a location along County Road 730 where Collins and/or AZ Asphalt maintained business operations and/or stored business equipment and vehicles.

24.     Upon information and belief, Diaz-Sabas was, at the time of this accident, only 16 years old and was not licensed to drive a motor vehicle alone on public roads within the State of Colorado for any purpose.

25.     As Dale Thomas approached the intersection of Highway 135 and County Road 8, he was passed by the Dodge pickup and trailer being driven by Diaz-Sabas.

26.     At this location, Highway 135 is relatively flat and follows the grade of the valley south into Gunnison.

27.     At this location, Highway 135 is straight in a southwesterly direction with nothing which would have visually obstructed Diaz-Sabas from seeing Dale Thomas and his bicycle directly ahead of him.

28.   At all times pertinent herein, the weather was sunny, dry and warm and would not have interfered with Diaz-Sabas's vision.

29.   Based on statements Diaz-Sabas made to Colorado State Patrol Trooper Jason Sparks, Diaz-Sabas last saw, and then passed, Dale Thomas as Thomas was riding in the shoulder next to an old tire that had been discarded at the edge of the highway shoulder.

30.   This old tire was marked to be 72.8 feet from the edge of County Road 8.

31.   Upon information and belief, and based on the investigation conducted by the Colorado State Patrol, Diaz-Sabas was driving at an estimated speed of 15 m.p.h. as he made his right turn onto County Road 8.

32.   Also upon information and belief, and based on the investigation conducted by the Colorado State Patrol, Dale Thomas was riding at an estimated speed of 15 miles per hour.

33.   Suddenly and without warning to Dale Thomas, Diaz-Sabas began to make a right turn onto County Road 8 and drove directly into the path of Dale Thomas's oncoming bicycle.

34.   Upon information and belief, very little time would have elapsed between the time Diaz-Sabas admitted passing Dale Thomas and when Diaz-Sabas entered the intersection of County Road 8.

35.   Upon information and belief, the truck and trailer entered the intersection at the same time as Dale Thomas's bicycle.

36.  Upon information and belief, Dale Thomas did not have sufficient time to take any evasive action once he saw the truck and trailer cut in front of him.

37.  Upon information and belief, at this same time, an independent witness, Ryan Cross, was traveling approximately 40-50 feet directly behind the truck and trailer driven by Diaz-Sabas.

38.  According to Ryan Cross, the truck and trailer completely blocked Dale Thomas's path of travel.

39.  Upon information and belief, Dale Thomas struck the trailer just forward of its front axle.

40.  Upon information and belief, the impact from this collision threw Dale Thomas from his bicycle and both bicycle and rider then slid underneath the wheels of the trailer.

41.  Upon information and belief, the wheels of the trailer crushed Dale Thomas's chest cavity.

42.  This catastrophic crush injury caused severe internal damage and bleeding which led to Dale Thomas's death along the side of Highway 135.

43.  According to the witness Ryan Cross, Dale Thomas "could not have prevented this in any way".

44.  Trooper Darel Reed of the Colorado State Patrol responded to the scene and began investigating this accident.

45.  Diaz-Sabas was careless in causing the death of Dale Thomas and violated numerous traffic statutes including, but not limited to C.R.S. Sections 42-4-709 (Stop when

traffic obstructed); 42-4-903 (Turning movement and required signals); 42-4-1003 (Overtaking a cyclist on the left and giving a separation of 3 feet); 42-4-1007 (Driving on laned road and shall not depart from laned road until such movement can be made with safety);   42-4-1402(2)(c) (Careless driving); and 42-4-1008.5(1) (Driver shall not in a careless manner drive a vehicle close, toward or near a bicyclist unnecessarily).

46.     Diaz-Sabas drove a truck without a proper license in violation of C.R.S. Sec. 42-2-101(1).  Likewise, Diaz-Sabas did not have suffcent experience or training to drive a pick up truck and trailer for either personal or business purposes.

47.     As a part of the accident investigation, Trooper Joe Chin and Trooper Darel Reed conducted a Level II investigation of the Dodge truck and trailer for mechanical defects.

48.     Upon information and belief, at all times pertient herein, this Level II investigation revealed that the Dodge pickup involved in this incident (Colo. Plate # 287TQH) did not have functioning brake lights.

49.     Upon information and belief, at all times pertinent herein, this Level II investigation revealed that the Dodge pickup involved in this incident (Colo. Plate # 287TQH) did not have the required proof of compliance with the periodic state inspection regulations.

50.   Upon information and belief, at all times pertinent herein, this Level II investigation revealed that the Dodge pickup involved in this incident (Colo. Plate # 287TQH) did not have required commercial markings.

51.   Upon information and belief, at all times pertient herein, this Level II investigation revealed that the trailer involved in this incident (Wyoming Plate # 3-6888) did not have properly functioning brake lights and/or turn signals, specifically, a right side turn signal.

52.   The Colorado State Patrol issued an Out of Service Order (Report Number CO5C28000183) preventing the truck and trailer from being driven until such defects were corrected.

53.   No independent witnesses to this collision other than Ryan Cross remained on scene after the collision to give statements to law enforcement.

54.   Upon information and belief, the conduct of Diaz-Sabas in ignoring the risk of initiating a right hand turn directly into the path of Dale Thomas's oncoming bicycle amounts to a conscious disregard of a substantial and unjustified risk that would cause the death of another.

55.   Diaz-Sabas's conscious disregard rises to the standard of "reckless" conduct that resulted in the death of another person and is comparable to that of manslaughter.

56.   Under such analysis, Diaz-Sabas's reckless conduct meets a standard of a "felonious killing" for which the cap on non-economic damages in a wrongful death case should be lifted.

9

57.    Upon information and belief, the conduct of Collins, in ignoring the risk of allowing an unlicensed 16 year old to drive a truck and trailer with inoperable brake and turn signals, amounts to a conscious disregard of a substantial and unjustified risk that would cause the death of another.

58.    Collins' conscious disregard rises to the standard of "reckless" conduct that resulted in the death of another person and is comparable to that of manslaughter.

59.    Under such analysis, Collins' reckless conduct meets a standard of a "felonious killing" for which the cap on non-economic damages in a wrongful death case should be lifted.

60.    As a direct and proximate result of the conduct of Defendants, as described above, Plaintiff Petrick has sustained, and will continue to sustain into the future, substantial non-economic damages including, but not limited to: grief, a loss of the consortium and companionship of her husband, impairment of her quality of life, inconvenience, pain and suffering and emotional stress.

61.    As a further direct and proximate result of the negligence of Defendants, as described above, Plaintiff Petrick has sustained, and will continue to sustain into the future, substantial economic damages including, but not limited to: funeral and burial expenses, the loss of the direct economic support of her husband, the loss of the value of his services and the expenses of grief counseling treatment to help her deal with the loss of her husband.

## IV.    FIRST CLAIM FOR RELIEF
### (*Wrongful Death – Diaz-Sabas*)

62.   Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-61 as if fully stated herein.

63.   C.R.S. § 13-21-202 allows for the recovery in an action for damages resulting from the death of a person caused by the "wrongful act, neglect, or default" of another when, had the deceased party survived, the deceased party may have been entitled to bring an action for damages on their own behalf.

64.   Pursuant to C.R.S. § 13-21-201, Plaintiff Petrick is the proper plaintiff in any claim brought for the wrongful death of Dale Thomas at this time.

65.   Diaz-Sabas owes a duty to drive safely and to exercise reasonable care in the operation of the truck and  trailer along the public roadways of the State of Colorado.

66.   Diaz-Sabas breached this duty by:

   a.   driving recklessly and carelessly;

   b.   turning right in front of Dale Thomas's oncoming bicycle;

   c.   failing to maintain a safe distance between his vehicle and Dale Thomas's bicycle;

   d.   failing to yield right of way to Dale Thomas's bicycle;

   e.   failing to properly change lanes;

   f.   driving a truck and trailer with inoperable brake lights and turn lights;

11

g.  driving the truck and trailer combination without being properly licensed to do so; and

h.  violating Colorado statutes and rules of the road when he caused the death of Dale Thomas, including but not limited to those referenced herein.

67.  As a direct and proximate result of Diaz-Sabas's breach, Plaintiff has suffered damages, as described above.

## V.      SECOND CLAIM FOR RELIEF
### (*Wrongful Death – Collins*)

68.  Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-67 as if fully stated herein.

69.  C.R.S. § 13-21-202 allows for the recovery in an action for damages resulting from the death of a person caused by the "wrongful act, neglect, or default" of another when, had the injured party survived, the injured party may have been entitled to bring an action for damages on their own behalf.

70.  Pursuant to C.R.S. § 13-21-201, Plaintiff Petrick is the proper plaintiff at this time in any claim brought for the wrongful death of Dale Thomas.

71.  Collins had a duty to exercise reasonable care in allowing his vehicles to be used for business purposes upon the public roadways of the State of Colorado and in properly hiring, training and supervising employees working for AZ Asphalt.

72.  Collins breached this duty by:

i.   failing to adequately maintain the truck and trailer's brake lights and turn signals;

j.   failing to submit his truck and trailer to periodic state inspections;

k.   failing to take a vehicle with defective equipment out of service;

l.   failing to verify Diaz-Sabas's license status;

m.  failing to verify Diaz-Sabas's qualifications or experience to drive a large truck and trailer;

n.  hiring an unlicensed 16 year old for a position that requires driving a truck and trailer on Colorado public roads; and

o.  not fully and properly training Diaz-Sabas on how to safely operate and drive the truck and trailer.

73.   As a direct and proximate result of Collins' breach, Plaintiff has suffered damages, as described above.

## VI.    THIRD CLAIM FOR RELIEF
### (*Respondeat Superior – AZ Asphalt*)

74.   Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-73 as if fully stated herein.

75.   At all times pertinent herein, Diaz-Sabas and Collins were acting within the course and scope of their employment, ownership, management and/or agency with AZ Asphalt.

76.     As employees, owners, managers and/or agents of AZ Asphalt, AZ Asphalt is vicariously liable for the acts of Diaz-Sabas and/or Collins, under the Respondeat Superior theory and Colorado law.

Plaintiff requests a jury trial on all issues.

WHEREFORE, Plaintiff prays that judgment be entered for Plaintiff and against Defendants in an amount to be determined at trial, plus costs, statutory interest from the date this cause of action accrued, or as otherwise permitted under Colorado law, and for such other and further relief as this Court deems just and proper.

Respectfully submitted this 25th day of January, 2016.

CRAWFORD WEISS, LLC

*/s/ Brian Weiss*
*/s/ Jason Crawford*

_____

Brian Weiss
Jason Crawford
450 E. 17th Ave., Suite 400
Denver, CO 80203
Phone: (303) 741-0249
Fax: (303) 648-5149
E-mail:  brian@crawfordweiss.com
E-mail:  jason@crawfordweiss.com
Attorneys for Plaintiff

Plaintiff's address:
15274 Stoney Terrace Way
Shasta, CA  96087